543 A.2d 191

Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, Appellant *v.* John H. Hoover, Jr., Appellee.

Submitted on briefs March 28, 1988, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Harold H. Cramer*, Assistant Counsel, with him, *John L. Heaton*, Chief Counsel, for appellant.

No appearance for appellee.

OPINION BY JUDGE CRAIG, June 6, 1988:

The Department of Transportation, Bureau of Driver Licensing (DOT or the department) appeals from an

order of the Court of Common Pleas of Bucks County that sustained the appeal of John H. Hoover, Jr., from DOT's cancellation of his driver's license.

The issues presented are (1) whether DOT made out a prima facie case that Hoover was "not entitled to the issuance" of the license, and (2) if DOT met its initial burden, whether Hoover's evidence of his later payment of outstanding fines in another state and of his entitlement to restoration of his license there constituted a sufficient basis for the court's order to DOT to restore his Pennsylvania license.

### History

Hoover applied for a Pennsylvania learner's permit in March of 1986. By letter dated March 27, 1986, the director of DOT's Bureau of Driver Licensing informed Hoover that DOT had received information that Florida had suspended the driving privilege of someone with his name and birthdate. The letter stated that if Hoover's license was suspended in Florida he was not eligible for a Pennsylvania driver's license; that, if the information regarding suspension was incorrect or if his driving privilege had been restored in Florida, he should contact the transportation authorities there and obtain a clearance letter to forward to DOT within thirty days; and that if DOT did not receive the clearance letter it would suspend his license until such time as it received proof of restoration (Exhibit C-1; Reproduced Record 29a).

Nevertheless, Hoover took and passed the Pennsylvania driver's examination on April 7, 1986, and DOT issued a license to him on that date. However, by letter dated May 9, 1986, DOT notified Hoover that it was cancelling his license under authority of section 1572 of the Vehicle Code, 75 Pa. C. S. §1572, because it had determined that he was not entitled to the original issuance of the license (Ex. C-1; R.R. 27a).

At the hearing in common pleas court on Hoover's appeal, DOT rested after offering into evidence Exhibit C-1, which was comprised of several documents, including the two letters noted above, a photocopy of Hoover's driving record as maintained by the state of Florida (R.R. 32a-33a), and a photocopy of his application for learner's permit and driver's license (R.R. 28a).

As the trial court noted in the opinion, Hoover testified that he lived in Florida before moving to Pennsylvania in August of 1979, and that he had not driven since he moved here or applied for a license before March of 1986 (Notes of Testimony 5; R.R. 13a). Hoover stated that he was addicted to quaaludes while he was living in Florida, and that for that reason he has no real recollection of moving violations or a traffic accident during that period (N.T. 4, 7; R.R. 12a, 15a). The court noted further that, when Hoover received the March 27, 1986, letter from DOT, he immediately arranged to clear himself with the Florida authorities, and he introduced into evidence certificates from the court officials of Dade County and Osceola County, Florida, indicating that he had paid the outstanding fines of which they had record and that he was eligible to have his driving privileges restored in that state (Exs. D-1 and D-2; R.R. 35a-39a).

The court sustained Hoover's appeal from the cancellation based on conclusions (1) that DOT had not met its initial burden under section 1572 because the copy of Hoover's application that DOT offered in evidence was so illegible that the court could not establish from the exhibit that it in fact contained misstatements, and (2) that Hoover had "cured" the violations shown on the certificate of his driving record.[1]

---

[1] Our scope of review of a common pleas court decision in a license suspension case is limited to determining whether the court made findings of fact unsupported by substantial evidence, commit-

*DOT's Prima Facie Case*

Section 1572 of the Vehicle Code provides:

The department may cancel any driver's license upon determining that the licensee was not entitled to the issuance or that the person failed to give the required or correct information or committed fraud in making the application or in obtaining the license or the fee has not been paid. Upon the cancellation, the licensee shall immediately surrender the canceled license to the department.

We agree with DOT that proof of misstatements on the application was not essential to its prima facie case. The department notes that section 1503 of the Vehicle Code, 75 Pa. C. S. §1503, provides in part:

(a) General rule.—The department shall not issue any driver's license to, or renew the driver's license of, any person:

. . . .

(2) Whose operating privilege is suspended or revoked in any other state upon grounds which would authorize the suspension or revocation of the operating privilege under this title.

The violations listed on Hoover's Florida driving record, a portion of Exhibit C-1 separate from the application, were not discharged at the time of his application. Because some of his Florida suspensions were on grounds that would authorize suspension in Pennsylvania if the violations had been committed here,[2] DOT argues that

---

ted an error of law or abused its discretion. *Department of Transportation, Bureau of Driver Licensing v. La Salle,* 102 Pa. Commonwealth Ct. 422, 520 A.2d 131 (1987). Our scope of review in a case involving cancellation under section 1572 is the same.

[2] For example, the Florida driving record lists several suspensions for failure to appear in response to a traffic summons. Section 1533 of the Vehicle Code, 75 Pa. C. S. §1533, requires that the

it met its burden under section 1572 of showing that Hoover was not entitled to the issuance of the license. DOT's position on this point is correct. This evidence, in itself, was enough to meet the department's initial burden.[3]

However, we agree with the trial court that DOT did not make out a prima facie case on its *separate* charge under section 1572 that Hoover gave incorrect information on his driver's license application. DOT's failure stemmed from the fact that the department's only evidence of the contents of the application was a photostatic copy of it that was so poor in quality that the printed matter on the form was largely illegible. The Uniform Photographic Copies of Business and Public Records as Evidence Act, 42 Pa. C. S. §6109, provides in pertinent part as follows:

> (b) General rule.—If any . . . department or agency of government, in the regular course of business or activity, has kept or recorded any memorandum, writing, entry, print, representation, or combination thereof, of any act, transaction, occurrence or event, and in the regular course of business has caused any or all of the same to be recorded, copied or reproduced by any photographic, photostatic . . . or other

operating privilege of a motorist be suspended if he fails to respond to any traffic citation issued by any state for any offense other than parking.

[3] DOT pushes the argument one step further by contending that the mandatory language of section 1503, flatly prohibiting the department from issuing licenses to persons described in that section, should be construed to limit the discretion conferred on the department by section 1572 ("The department may cancel . . ."), thereby *requiring* DOT to cancel licenses issued to persons described in section 1503. We need not decide this issue in order to determine whether DOT met its prima facie burden under section 1572 in the present case.

process *which accurately reproduces* . . . the original, the original may be destroyed, in the regular course of business, unless its preservation is required by law. *Any such reproduction in order to comply with this section must accurately reproduce all lines and markings which appear on the original.* Such reproduction, when satisfactorily identified, is as admissible in evidence as the original itself in any judicial or administrative proceeding, whether the original is in existence or not . . . . (Emphasis added.)

DOT concedes that the printing on the copy of the application that it offered is illegible. Therefore, the copy did not meet the requirements of section 6109, and the trial judge would have been justified in refusing to admit it into evidence.

Having admitted the copy, however, the trial judge, as the trier of fact in the de novo proceeding, was fully entitled to accord the document whatever weight he deemed appropriate. He correctly concluded that the document proved nothing. The quality of the copy was so poor that, although Hoover's check marks were discernible, the printed questions to which he was responding were not readable. *Nor did DOT offer into evidence a legible copy of the standard form,* which the judge could have used to compare with the blurred copy in order to determine what Hoover's check marks meant.

On DOT's charge that Hoover did not provide correct information on his license application, proof of the contents of the application obviously was an element of the department's prima facie case. Therefore, DOT had the responsibility of providing the trier of fact with everything necessary for making the factual determination that DOT sought. Why DOT failed in that respect is hard to fathom. The judge most emphatically did not

have a responsibility to go outside the record looking for materials essential to establishing DOT's prima facie case. Indeed, such conduct on his part would have been improper.

DOT contends that this court has concluded that a trial court committed error when it decided that a blurred reproduction of a standard citation form did not constitute sufficient evidence to support a factual determination of conviction. *Department of Transportation, Bureau of Traffic Safety v. McVay,* 95 Pa. Commonwealth Ct. 154, 504 A.2d 980 (1986). However, the brief discussion of that point in our *McVay* opinion does not indicate whether DOT had provided the court with a clear copy of the form in question for the purpose of comparison. Here there is no dispute that DOT offered nothing more than the illegible copy of Hoover's application for the purpose of proving its contents.

In addition, our court noted in *McVay* that proof of the contents of the citation form was not necessary to establish the fact of conviction (which fact the trial court had declined to find) because the record established that the driver involved had paid the fine for the offense charged, and the fact of payment bore with it an admission of conviction. We decline to extend *McVay* in such a manner as to require a trial judge to make out DOT's prima facie case for it.

Thus, solely because of the admission into evidence of Hoover's Florida driving record, DOT made out its prima facie case that the cancellation was proper, on the basis of non-entitlement, rather than on the basis of misinformation or fraud. Hoover, of course, was entitled to attempt to rebut DOT's evidence, and he did attempt to do so. However, the trial court's conclusion that DOT had not carried its initial burden was error.

### Cure of Violations

The trial court also based its order directing reinstatement of Hoover's license on its finding that he had "cured the violations shown on the certificate of his driving record by taking care of the Florida fines and securing letters from the two counties that he was eligible for reinstatement." As DOT points out, however, Hoover's evidence relating to his efforts to secure reinstatement in Florida *after* the cancellation of his Pennsylvania license was not relevant to the issue of whether the cancellation was proper when it was done. DOT cites *McKay v. Commonwealth,* 52 Pa. Commonwealth Ct. 24, 415 A.2d 910 (1980), in which a driver contested the department's action in recalling her operating privileges on the ground of incompetency. The driver argued, among other things, that DOT did not prove at the de novo hearing before the common pleas court that she was incompetent on the date of that hearing. This court held that DOT's burden was to prove that she was incompetent on the date of the recall:

> Everything that happened between the date of the recall and the date of the de novo hearing would be irrelevant to a determination of the Appellant's competency on the date of recall, although such facts may be relevant in a proceeding under the Department's regulations to establish her subsequent competency to drive . . . .

*McKay,* 52 Pa. Commonwealth Ct. at 30, 415 A.2d at 913. The situation in the present case is analogous. DOT's burden at the de novo hearing was to prove that the cancellation was proper when it was done, not in the light of subsequent events.

DOT also notes correctly that Hoover's evidence did not prove that his license had been reinstated in Florida. Rather, the letters from county officials that Hoover

offered indicated only that he no longer had outstanding violations of record in their counties and that the officials believed that he was entitled to be reinstated if he submitted the letters to the proper state authorities (Ex. D-1 and D-2; R.R. 35a and 36a). Hoover offered nothing in the form of a communication from the state of Florida indicating that his license had in fact been reinstated.

Because DOT made out its prima facie case under section 1572 that Hoover was not entitled to the issuance of the license originally, and Hoover did not, as a matter of law, offer sufficient evidence to overcome DOT's proof, the record establishes that the cancellation was proper. DOT's point is well taken that "cancellation," as commonly defined, connotes a final, irreversible action, as contrasted with, for example, "suspension," and the common definition should be applied because the term is not expressly defined within the statute. If the cancellation had been improper, then the trial court or this court could reverse it and order reinstatement. However, where the cancellation was proper, the act was final, and the license in question became void. The licensee could not cure the underlying reasons for the cancellation through subsequent actions. Therefore, the trial court's conclusion on this point was erroneous as well.

Our conclusion here does not mean that Hoover can never obtain a driver's license in Pennsylvania. If he reapplies and complies with all applicable requirements, he may be able to acquire a *new* license.

The order of the court of common pleas is reversed.

ORDER

NOW, June 6, 1988, the order of the Court of Common Pleas of Bucks County, at No. 86-4325-13-6, dated November 25, 1986, is reversed.